JOHN GRUBER, PETITIONER, v. RUDOLPH FECHNER,
RESPONDENT.

Decided July 31, 1939.

For the petitioner, *Harry Barth*.

For the respondent, *David Roskein*.

Petitioner in case *sub judice* alleges that on April 16th, 1938, he was removing bread from an oven when he struck his right elbow against oven door causing severe pain. This petition was filed July 6th, 1938. Amended petition was filed October 14th, 1938, amending date of accident as of April 10th, 1938, and that striking of elbow was against a right steam box door.

Both petitions make reference to a similar occurrence several months prior to April 10th. Petitioner did not stop work but notified his employer. A small lump appeared on elbow at that time which grew to the size of an egg after the occurrence of April 10th. Subsequently another amended petition was filed stating early in August, 1937, as the date of the first incident.

Respondent filed an answer and an amended answer denying that petitioner sustained a compensable accident and causal relationship. Before trial it was stipulated as to employment and rate being $20 per week. Case first came to trial November 21st, 1938.

Petitioner testified to occurrence in August, 1937, when he first alleges he struck elbow on steam box door, arm being

black and blue in region struck, became swollen and pained, swelling disappeared and a small lump, size of a pea, remained. Pain ceased. He notified his employer, was subsequently treated by Dr. Fermaglich, who sent him to Dr. Pitkin, who operated upon the arm. Later respondent's carrier had petitioner treated by Dr. Ewing.

Dr. Harry B. Fermaglich testified that petitioner came to his office May 11th, 1938, gave a history of the accidents. Witness diagnosed from history and objective signs as a bursitis. Petitioner was referred to Dr. Knapp who took X-rays and diagnosed case as one of chronic bursitis. Witness then concluded to operate. A longitudinal incision along the line of growth was made but when he reached below the skin he found a solid mass attached to the structures below. Wound was immediately sutured and healed and petitioner was referred to a general surgeon for hospitalization and operation.

Dr. Pitkin testified of seeing the petitioner, receiving a history, found a mass over right elbow which he diagnosed as a bursitis. Upon operation he found a hard mass. Same was removed and sent to the laboratory. The laboratory report was that same was a spindle cell sarcoma.

The employer testified to petitioner telling of striking arm on April 16th, but denies notice of previous incident.

Dr. Markley, pathologist of Holy Name Hospital, Teaneck, testified also his examining specimen microscopically and found same to be a spindle cell sarcoma. He further stated "it might be of neurongenic origin."

Dr. Ruoff testified as to his examination and findings. He estimated petitioner's permanent disability as seventy-five per cent. of the right arm. He was of the opinion that trauma played a part in the disability.

Dr. Raphael Gilady testified as to his examination of December, 1938, and his findings as follows: "Physical examination exactly presents a man of past middle age, asthenic thin-like, there was no organic changes in the heart or lungs; I did find on X-ray examination some nodules in the left lower lobe, a small nodule in the left lower lobe, this nodule will bear watching, as I expressed it. I also found in this plate, *P-3,* a small nodule in the lower end of the femur.

On further examination it was disclosed that there was a tumor mass in his right elbow which rendered that elbow joint somewhat fixed, in other words, there was limitation of extension and flexion and this tumor mass was exhibited and it showed and infiltrated mass in the lower end of the humerus, and it also disclosed some encroachment of the elbow joint, in other words, the surface was not smooth, the articulation or surface was not smooth any more because the further changes upon the movement in this joint."

The doctor further stated that an examination of the slides revealed a spindle sarcoma of synovial origin or a synovioma.

Dr. George Thomas Pach, who specializes in the diagnosis and treatment of cancer, was then called by the petitioner. He treated the petitioner over a period of time. His opinion was that this man has a bony tumor developing on the posterior aspect of the lower end of the humerus, which involves the elbow joint and prevents extension of the arm. The character of the bony tumor is most likely benigh—very likely is not malignant. It has been a later development as a result, of the injury, because it is of the type of bony growth that would be due to either one of two things: most likely either a traumatic ossified periosteitis or myositis ossificans. Most likely it is either one of those two conditions. And this type of bony growth is very slow to develop. One may have an injury two months before bone will be laid down. It is not like a malignant tumor or some acute injury that may develop quite rapidly. The doctor was of the opinion that trauma was a competent producing cause of the synovioma and bony tumor of the humerus of which petitioner suffers.

Dr. Edgar A. Ill and Dr. Asher Yaguda testified for the respondent at hearing May 5th and they were of the opinion that trauma bore no relationship to the disability. Dr. Nicholas Alter who qualified as a pathologist was also of the same opinion. Dr. Max Singer was of the opinion that trauma played no part in producing tumor relying upon Dr. Ewing's five postulates as authority.

Dr. Fern who examined petitioner several times, the last on March 27th, 1939, estimated disability as fifty per cent. of right arm with a belief that same was not due to trauma.

Dr. Ewing's letter of July 7th, 1938, reading in part as follows, was marked in evidence: "I wish to report on the case of John Gruber. This man shows a diffuse, tender swelling involving the right elbow and lower portion of the humerus. There is a recent partly healed biopsy incision. There is considerable limitation of motion of the elbow. The swelling is firm but not hard. Microscopic section shows a cellular spindle-cell sarcoma. The structure suggests a synovioma, a malignant tumor derived from a bursa or joint surface. These tumors are highly malignant and radio-resistant, and very few are cured by amputation or any other method. We are inclined to think, Dr. Pach and I, that the safest procedure is amputation, but we cannot guarantee a cure. On that account I am disposed to recommend a preliminary course of X-ray treatment to be followed by amputation in case the treatment is not satisfactory. An X-ray picture of the lungs should be taken. Regarding the traumatic origin, it is impossible to give a definite opinion. The man gives a somewhat direct but unsatisfactory history of injury. He struck his elbow against the iron bar but he suffered similar milder injuries on other occasions. He attributed the tumor to one of these injuries. While synovioma usually arises without a history of injury, it is impossible to positively reject a traumatic origin in this case."

I have also had reference to a section of Dr. Ewing's article Traumatic Cancer, published in Archives of Pathology.

After a most careful study of all of the testimony and exhibits and a careful study of the doctrine enunciated in the recent case of *Bollinger* v. *Wagaraw Building Supply Co.*, 17 *N. J. Mis. R.* 215, I am of the opinion that petitioner met with a compensable injury and is entitled to compensation.

\*        \*        \*        \*        \*        \*        \*

JOHN C. WEGNER,
*Deputy Commissioner.*